UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DERRICK ROGERS, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| EQUIFAX INC., | |
| Defendant. | |

Plaintiff Derrick Rogers, individually and on behalf of the class defined below, sues Equifax Inc. and alleges as follows:

## NATURE OF THE CASE

1.     During a three-week period in the spring of 2022, Equifax provided inaccurate credit scores on millions of Americans applying for loans. Plaintiff, one of the many victims of Equifax's error, had a mortgage application denied because Equifax provided an inaccurate credit score to his prospective lender.

2.     Consumer reporting agencies like Equifax monitor, collect, and assess credit, repayment and other information on consumers. Using this information,

the agencies produce a credit report and credit score for individual consumers like Plaintiff. Equifax is a consumer reporting agency subject to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), and thus is required to adopt reasonable procedures to ensure the "maximum possible accuracy" of the consumer credit information it furnishes lenders, *id*. § 1681e. But as Equifax executives recently admitted, it furnished lenders inaccurate credit scores on millions of putative borrowers from March 17 to April 6, 2022. In public statements the company blamed the widespread problem on a "technology coding issue" that it recklessly failed to remediate, and indicated that credit scores erroneously swung by 25 points or more for approximately 300,000 consumers.

3.     Equifax's lax controls and inaccurate consumer credit reporting harmed Plaintiff and other Class members, for whom Equifax reported inaccurate credit scores in the spring of 2022. Even a minor discrepancy in a consumer's credit score can result in a loan being denied—what happened to Plaintiff—or a higher interest rate that increases loan payment amounts and lengthens repayment schedules. Many Class members were denied loans or are paying higher interest rates as a result of the inaccurate information Equifax furnished lenders. Many

2

other Class members paid fees as a result of Equifax's error because it led them to request more than one credit report within a year's time from Equifax, and federal law permits a consumer to obtain only one such report for free within a 12-month period. Moreover, Equifax is liable to every Class member for statutory damages because the FCRA provides for $1,000 in damages for each individual instance of willful noncompliance—of which, in this case, there were millions. 15 U.S.C. § 1681n(a)(1)(A).

4.      Plaintiff, on behalf of the Class, seeks all available damages as well as robust injunctive relief to prevent Equifax from making a similar error again.

## PARTIES

### A.      Plaintiff

5.      Plaintiff Derrick Rogers is a citizen of Florida and a resident of Crystal River, Florida. On April 5, 2022, Plaintiff submitted a mortgage application. On April 6, the prospective lender obtained his credit reports, including from Equifax. The lender denied Plaintiff's application with the explanation that he needed a credit score of 640 to qualify. The lender further explained that, of the scores provided by the three major credit reporting companies (Equifax, Experian, and

TransUnion), it applies the score that is the middle number (i.e., of the three scores, the one that is neither the highest nor the lowest). And the lender said that, for Plaintiff, Equifax had provided the middle score — and it was only 621. Therefore, even though his TransUnion score was significantly higher (714), Plaintiff's loan was denied. On August 3, 2022, Plaintiff checked his Equifax credit score on Credit Karma. It was 672. Had Equifax accurately reported Plaintiff's credit score to his prospective lender, he would have qualified for the mortgage.

6.      Plaintiff and all Class members suffered injury in fact because Equifax disclosed inaccurate credit information about them to a third party as a result of Equifax's reckless failure — in violation of the FCRA — to implement reasonable procedures to ensure the accuracy of its consumer credit reporting information.

## B.   Defendant

7.      Defendant Equifax Inc., one of the country's three largest consumer credit reporting agencies, is a Georgia corporation domiciled in Georgia. Its headquarters and principal place of business is located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

## JURISDICTION AND VENUE

8.      The Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under a federal statute, the Fair Credit Reporting Act.

9.      In addition, this Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are more than 100 Class members, the amount in controversy exceeds $5 million (excluding interest and costs), and Plaintiff and other Class members are citizens of states different from the state in which Equifax is domiciled.

10.     This Court has general personal jurisdiction over Equifax because its principal place of business is in Georgia and its contacts with Georgia are continuous and systematic.

11.     Venue in this Court is proper under 28 U.S.C. § 1391 because Equifax is headquartered and regularly conducts business in this District, and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District.

## **FACTUAL ALLEGATIONS**

### A.    **Equifax's Credit-Reporting Error**

12.    On May 27, 2022, Equifax officials revealed that "a coding issue" in an electronic program slated for replacement may have resulted in the miscalculation of attributes used to calculate consumer credit scores. According to public reporting at the time, this problem at Equifax occurred "during a technology change to its legacy online model platform [and] may have resulted in the miscalculation of certain credit attributes for about 12% of credit scores." Equifax also said it had corrected the problem and added controls to "help detect and prevent similar issues in the future."

13.    As a result of this error, between March 17 and April 6, Equifax sent inaccurate credit scores on millions of Americans to their actual or potential lenders. Equifax sent the incorrect scores on people who were applying for credit cards, mortgages, lines of credit, and auto loans, among other transactions.

14.    Although the problem affected Equifax's reporting in March and early April, not until May 2022 did Equifax begin notifying lenders of the errors.

15.     At an investor conference in June 2022, Mark Begor, Equifax's chief executive, publicly acknowledged the error, stating that the coding glitch "resulted in some scores going out that had incorrect data."

16.     On August 2, 2022, the *Wall Street Journal* reported that the inaccurate credit scores provided by Equifax were "sometimes off by 20 points or more in either direction . . . enough to alter the interest rates consumers were offered or to result in their applications being rejected altogether." Equifax publicly indicated that for approximately 300,000 consumers, the credit scores it reported were inaccurate by 25 points or more. One large U.S. bank reported that 18% of applicants during the relevant three-week period had incorrect scores. The inaccuracies in the credit scores provided due to Equifax's error sometimes exceeded 50 points.

17.     Equifax's error caused financial institutions to receive inaccurate credit reports on millions of Americans seeking loans. Mr. Begor, however, told the *Journal* that "[t]he impact is going to be quite small" and is "not something that's meaningful to Equifax."

18.     On August 4, 2022, three members of Congress—Sens. Elizabeth Warren and Mark Warner, and Rep. Raja Krishnamoorthi—sent Equifax a letter seeking more information about its widespread credit-reporting error. The letter refers to the allegation that the error affected loan qualifications and interest rates as "deeply troubling," stating that borrowers "may be stuck paying higher costs for loans, credit cards, cars, and houses. Your company owes the public a clear and transparent explanation for why and how it made such grievous errors, the scope of the errors, and why you have failed to notify affected consumers of these errors."

19.     On August 9, 2022, Rep. Maxine Waters, chair of the House Financial Services Committee, asked the Consumer Financial Protection Bureau to prohibit Equifax from furnishing credit scores to lenders until it can prove its controls are sufficient to ensure accurate scores. In her letter to the CFPB, Congresswoman Waters also criticized Equifax for its "latest egregious abuse of consumers" and stated that "its leadership's team's efforts to downplay the harm is yet another example of harm caused by what is quickly becoming a recidivist bad actor."

20.    Congresswoman Waters also wrote directly to Mr. Begor on August 9, 2022, expressing "alarm[]" about the credit-reporting error and stating that she is "very concerned that this error likely resulted in economic injury and otherwise harmed consumers who may have been denied credit when they needed it or are now paying higher interest rates on loans than they are entitled to based on their actual credit scores when they applied." Congresswoman Waters further stated that, "[b]ased on your initial actions in response to this matter, I am deeply concerned not all harmed consumers will be promptly identified, notified, and made whole."

21.    In response to Congresswoman Waters's letter, Mr. Begor said that Equifax "takes this issue very seriously."

## B.    The FCRA Requires Equifax to Ensure Accuracy in Consumer Reports

22.    As a credit reporting agency subject to FCRA, Equifax creates and sells consumer reports or "credit reports" showing a consumer's information, including details of the consumer's credit history, to third-party lenders and other businesses. Lenders use credit reports to determine whether to extend a loan to a given consumer and, if so, on what terms.

23.    A consumer report, under FCRA, is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for a loan.

24.    As the CFPB noted, "[a]ccuracy in consumer reports is of vital importance to the consumer reporting system, particularly as consumer reports play an increasingly important role in the lives of American consumers."

25.    Federal law permits Equifax and other credit reporting agencies to provide credit reporting services—which concern the confidential information of consumers and directly affect their financial livelihoods—only if Equifax adheres to the FCRA's provisions to ensure the privacy and accuracy of this information. FCRA requires Equifax, as a credit reporting agency, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the [credit] report relates." 15 U.S.C. § 1681e.

26.     According to the CFPB, "[i]n preparing consumer reports, it is not a reasonable procedure to assure maximum possible accuracy" if a consumer reporting agency uses "insufficient identifiers to match information to the consumer who is the subject of the report."

27.     Equifax's creation and furnishing of credit reports was intended to affect Plaintiff and the other Class members. The harm to Plaintiff and the other Class members from the inaccuracies in their credit reports that Equifax provided to third-party lenders was foreseeable to Equifax.

### C.     Consequences of Equifax's Credit-Reporting Error

28.     During the three-week period in which Equifax disseminated inaccurate credit scores, lenders requested almost 25 million credit reports from the three major credit reporting agencies. Equifax's error thus affected at least hundreds of thousands of American consumers.

29.     As the CFPB noted, "inaccurate information in consumer reports can have significant adverse impacts on consumers. These impacts are particularly concerning for prospective renters and job seekers struggling to recover from the impacts of the COVID–19 pandemic." For example, "[c]onsumers with inaccurate

information in their consumer reports may . . . be denied credit or housing they would have otherwise received, or may be offered less attractive terms than they would have been offered if their information had been accurate."

30.     Equifax itself recognizes that its credit-reporting services "impact some of life's most pivotal moments." FCRA's "maximum possible accuracy" requirement thus "remains as important today as it was when the statute was enacted in 1970."

31.     Plaintiff and Class members were denied loans, or offered higher interest rates or other terms less attractive than they would have been offered, as a result of Equifax's provision of inaccurate credit reports on them to lenders. Equifax's error affected not just mortgage applications but also other loan applications, including for auto loans and various other forms of credit. The *Journal* reported that "Equifax told one large auto lender that about 10% of applicants during the three-week period had inaccurate scores" and "[o]f those, several thousand saw a change of 25 points or more on their credit score[.]"

32.    As a result of Equifax's inaccurate reporting of their credit information, Plaintiff and Class members have suffered the following forms of harm, among others:

- impairment of their ability to borrow and/or to obtain credit;

- loss of use of and access to financial accounts and/or credit

- lowered credit scores resulting from credit inquiries following inaccurate reports being provided to lenders;

- fees and lost time expended to obtain credit reports in order to monitor their credit records as a result of Equifax's error; and

- money and time expended to free up assets and/or credit frozen or flagged due to inaccuracies.

33.    In addition, many Class members paid fees as a result of Equifax's error because it caused them to request more than one credit report within a year's time from Equifax. Federal law permits a consumer to obtain only one such report for free within a 12-month period.

34.    Equifax is also liable to every Class member for statutory damages under the FCRA, which provides for $1,000 in damages for each instance of willful noncompliance, of which there were millions. 15 U.S.C. § 1681n(a)(1)(A).

35.    Equifax willfully failed to comply with the FCRA's requirement it "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §§ 1681e(b), 1681n(a)(1)(A). Although Equifax has attempted to downplay the large-scale credit-reporting errors as having resulted from a mere "technical coding issue," Equifax continued to provide inaccurate credit reports when it knew or should have known of the inaccuracies. Equifax's action or inaction in these respects entailed an unjustifiably high risk of harm that was either known or so obvious that it should have been known.

36.    In addition to all available damages, Plaintiff, on behalf of the Class, also seeks injunctive relief requiring Equifax to, *inter alia*, (i) conduct a full-system audit to identify which consumers' credit scores and consumer reports were affected by the error; (ii) identify and notify each American citizen or permanent resident for whom Equifax's error resulted in the dissemination of an inaccurate report; (iii) establish a fund (in an amount to be determined) from which such persons may receive reimbursement for their lost time and out-of-pocket expenses incurred due to the error; (iv) disgorge its gross revenue derived from selling

inaccurate consumer reports and credit scores to business clients and the earnings

on such gross revenue; and (v) discontinue its inadequate protocols, procedures,

and practices and other wrongful conduct that enabled its massive credit-

reporting errors in the spring of 2022.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff seeks certification of the following Class under Rules 23(a),

(b)(2), (b)(3) and/or (c)(4) of the Federal Rules of Civil Procedure:

> All individuals and entities in the United States whose credit score or consumer report was inaccurately reported or inaccurately provided to an actual or potential lender by Equifax between March 17 and April 6, 2022.

Excluded from the Class are Equifax and its parents, subsidiaries, affiliates, officers

and directors, and any entity in which Equifax has a controlling interest; all

governmental entities and instrumentalities; and all judges assigned to this

litigation and their immediate family members and staff.

38.     Plaintiff reserves the right to modify or amend the definition of the

Class before the Court decides class certification.

39.     The Class is objectively defined and presently ascertainable. Its members can be readily identified based on records in Equifax's possession.

40.     The Class is too numerous for its members to be feasible joined in a single lawsuit, as it consists of millions of individuals whose credit information was inaccurately reported by Equifax.

41.     Plaintiff's claims are typical of the claims of all other Class members, as the claims arise under the same federal statute and stem from the same course of conduct. All Class members were exposed to the same wrongful conduct because Equifax disseminated inaccurate credit information about them to a third party during a discrete period of time.

42.     Common questions of fact and law exist with respect to all Class members and predominate over any questions affecting only individual members. The common questions include, without limitation:

A.      Whether Equifax willfully failed to use reasonable procedures to ensure the information included on its consumer credit reports was accurate;

B.      Whether Equifax adequately disclosed its credit-reporting error to Class members;

16

C.    Whether Equifax's conduct violates the FCRA;

D.    Whether Equifax has been unjustly enriched by its conduct;

E.    Whether the Class is entitled to injunctive relief to enjoin the unlawful conduct alleged herein, and the suitable form of such relief; and

F.    Whether Plaintiff and Class members have sustained harm by consequence of Equifax's conduct and if so, the appropriate measure of damages or equitable monetary relief.

43.    Plaintiff will fairly and adequately represent the interests of the Class and has no conflicts with any other member of the Class. Further, Plaintiff has retained counsel who are competent and experienced in privacy and other complex class action litigation.

44.    Equifax acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

45.    This class action is superior to other alternatives for the fair and efficient adjudication of this controversy. Prosecuting the claims pleaded herein in a class action will eliminate the possibility of repetitive litigation and ensure the adjudication of these claims that, being relatively small, likely would not be

17

brought individually. There will be no material difficulty in the management of this action as a class action.

### FIRST CAUSE OF ACTION
### Willful Violations of the Fair Credit Reporting Act
### 15 U.S.C. § 1681 *et seq.*

46.    Plaintiff realleges and incorporates paragraphs 1-45 as if fully set forth herein.

47.    Plaintiff brings this cause of action on his own behalf and on behalf of the Class.

48.    Plaintiff and Class members are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

49.    Under the FCRA, a "consumer reporting agency" includes any person which, for monetary fees or on a cooperative nonprofit basis, regularly engages, in whole or in part, in the practice of assembling or evaluating consumer credit information or other consumer information for the purpose of furnishing "consumer reports" to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

At all relevant times, Equifax was a consumer reporting agency. 15 U.S.C. § 1681a(f).

50.    Under the FCRA, a "consumer report" is any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used, expected to be used, or collected, in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for (i) credit or insurance to be used primarily for personal, family, or household purposes, (ii) employment purposes, or (iii) any other purpose authorized by 15 U.S.C. § 1681b. At all relevant times, Equifax had compiled and maintained a "consumer report" on Plaintiff and Class members. 15 U.S.C. § 1681a(d)(1).

51.    As a consumer reporting agency, Equifax was and is required to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard, protect and ensure the accuracy of the consumer credit information in its

possession, custody and control, including Plaintiff's and Class members' credit reports and credit scores. *See* 15 U.S.C. 1681(b).

52.     As a consumer reporting agency, Equifax's actions or inaction that allowed for the credit-reporting error described herein, which resulted in inaccurate credit entries and or credit scores being included on consumer reports, violate its duties and obligations as a credit reporting agency under the FCRA.

53.     Equifax failed to use reasonable measures to provide for the maximum possible accuracy in its consumer credit reports. Among other inadequacies, Equifax failed to:

A.     assess the risks of using unstable, outdated, or otherwise problematic code that could and would result in inaccurate credit scores and consumer reports being sent to lenders;

B.     take appropriate action to correct vulnerabilities or threats to the integrity of credit information given the known risks, including those associated with its widespread credit-reporting errors in March and April 2022; and

C.    develop  and  ensure  implementation  of  comprehensive information  integrity  and  verification  policies,  including  as  related  to  the consumer reports and credit scores of Plaintiff and Class members.

54.    Equifax's  failure  to  adopt  reasonable  data  integrity  and  security measures damaged Plaintiff and Class members as set forth herein.

55.    As  a  result  of  its  wrongful  actions,  inaction,  want  of  ordinary  care, and  the  resulting  harm  to  Plaintiff  and  Class  members,  Equifax  willfully  and recklessly violated the FCRA by failing to identify, adopt, maintain and monitor reasonable procedures to assure the maximum possible accuracy of Plaintiff's and Class  members'  consumer  credit  information.  15  U.S.C.  §§  1681e(b), 1681n(a)(1)(A).

56.    Equifax  recklessly  disregarded  that  its  information  verification measures  were  inadequate  and  unreasonable  and  that  additional  steps  were necessary to assure the accuracy of its credit reports on Plaintiff and the other Class members.  Equifax's  actions  and  inaction  entailed  an  unjustifiably  high  risk  of harm that was either known or so obvious that it should have been known.

57.     As a direct and proximate result of Equifax's actions and inaction described herein, Equifax sold or otherwise furnished to third parties inaccurate consumer reports on Plaintiff and the other Class members. For each such instance, Equifax willfully violated the FCRA. But for Equifax's willful failure to adopt reasonable procedures to ensure the accuracy of Plaintiff's and Class members' consumer credit information, they would not have sustained harm.

58.     As such, under 15 U.S.C. § 1681n(a), Plaintiff and Class members are entitled to actual, statutory, and punitive damages in an amount to be determined at trial, as well as the costs of the action together with reasonable attorney's fees as determined by the Court.

## SECOND CAUSE OF ACTION
### Negligent Violations of the Fair Credit Reporting Act
### 15 U.S.C. § 1681 *et seq.*

59.     Plaintiff realleges and incorporates paragraphs 1-45 as if fully set forth herein.

60.     Plaintiff brings this cause of action in the alternative, and on his own behalf and on behalf of the Class.

61.     As a result of its wrongful actions, inaction, want of ordinary care, and the resulting harm to Plaintiff and Class members, Equifax negligently violated the FCRA by failing to identify, adopt, maintain and monitor reasonable procedures to assure the maximum possible accuracy of Plaintiff's and Class members' consumer credit information. 15 U.S.C. §§ 1681e(b), 1681o(a).

62.     Equifax acted negligently by failing to remedy its inadequate information verification measures and failing to take the reasonable steps necessary to assure the accuracy of its credit reports on Plaintiff and the other Class members.

63.     As a direct and proximate result of Equifax's negligence, it sold or otherwise furnished to third parties inaccurate consumer reports on Plaintiff and the other Class members. But for Equifax's negligent failure to adopt reasonable procedures to ensure the accuracy of Plaintiff's and Class members' consumer credit information, they would not have sustained harm.

64.     As such, under 15 U.S.C. § 1681o(a), Plaintiff and Class members are entitled to actual damages in an amount to be determined at trial, as well as the

costs of the action together with reasonable attorney's fees as determined by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court enter an order:

A.   Certifying this action is a class action under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiff and his attorneys to represent the Class;

B.   Awarding statutory, compensatory and punitive damages against Equifax, including interest as permitted by law;

C.   Requiring non-restitutionary disgorgement of Equifax's gross revenues and profits derived from its furnishment of inaccurate consumer reports;

D.   Awarding reasonable attorney's fees and costs of litigation as provided by statute; and

E.   Entering such further and other relief the Court deems necessary or proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully seeks a trial by jury of all claims and issues so triable.

Dated: August 10, 2022

By:  */s/ Justin T. Holcombe*
  Justin T. Holcombe (No. 552100)
  Kris Skaar (No. 649610)
  **SKAAR & FEAGLE, LLP**
  133 Mirramont Lake Drive
  Woodstock, GA 30189
  Telephone: (770) 427-5600
  Facsimile: (404) 601-1855
  *jholcombe@skaarandfeagle.com*
  *kskaar@skaarandfeagle.com*

  James M. Feagle (No. 256916)
  Cliff R. Dorsen (No. 149254)
  Chelsea R. Feagle (No. 110863)
  **SKAAR & FEAGLE, LLP**
  2374 Main Street, Suite B
  Tucker, GA 30084
  Telephone: (404) 373-1970
  Facsimile: (404) 601-1855
  *jfeagle@skaarandfeagle.com*
  *cdorsen@skaarandfeagle.com*
  *cfeagle@skaarandfeagle.com*

Dena C. Sharp (*pro hac* forthcoming)
Jordan Elias (*pro hac* forthcoming)
Adam E. Polk (*pro hac* forthcoming)
Simon S. Grille (*pro hac* forthcoming)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
*dsharp@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*sgrille@girardsharp.com*

*Counsel for Plaintiff*

26